**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

TAMIKA R. MONTGOMERY-REEVES
VICE CHANCELLOR

LEONARD WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted: November 13, 2018
Date Decided: February 26, 2019

Mr. Alan J. Ross
67 Templeton Parkway
Watertown, MA 02742

Anthony M. Saccullo, Esquire
Thomas H. Kovach, Esquire
A. M. Saccullo Legal, LLC
27 Crimson King Drive
Bear, DE 19701

RE:    *Alan J. Ross v. Institutional Longevity Assets LLC et al.*
        Civil Action No. 2017-0186-TMR

Dear Parties:

This letter opinion resolves defendants' motion for judgment on the pleadings and plaintiff's motion to compel and motion for default judgment. This action represents one part of a long-running legal saga between plaintiff, defendants, and their associates and predecessors in interest. At its heart, the dispute is about the commercialization of a patent covering a method for pooling insurance policies. In the case before me, plaintiff asserts claims for breach of contract and breach of fiduciary duties related to (1) defendants' business development of a patent-holding entity, and (2) defendants' alleged failure to provide certain information to plaintiff.

Defendants move for judgment on the pleadings, arguing that they do not owe any of the contractual or fiduciary obligations that plaintiff seeks to enforce. For the reasons that follow, I grant defendants' motion for judgment on the pleadings. Because I grant the motion for judgment on the pleadings, plaintiff's motions are moot.

## I.     BACKGROUND

Plaintiff Alan J. Ross filed his Verified Complaint for Breach of Contract (the "Complaint") in this Court on March 10, 2017. On March 30, 2017, Ross moved to dismiss then-defendants Institutional Pooled Benefits LLC ("IPB"), Meyer-Chatfield Corp., and Balshe LLC; on March 31, 2017, I granted his motion. The remaining defendants are Institutional Longevity Assets, LLC ("ILA"), a member of non-party IPB;[1] MRB Pooled Benefits, LLC ("MRB"), a member of non-party IPB;[2] David B. Simon, the managing member of ILA;[3] and Bennett Meyer, a

---

[1]     Compl. ¶ 12.

[2]     *Id.*

[3]     *Id.* ¶ 6.

manager of MRB.[4]  The only other member of IPB is Ross.[5]  The dispute underlying

the claims relates to the commercialization of United States Patent No. 5,974,390

(the "Patent"), which describes "[a] system and method . . . for creating a predictable

flow of funds . . . . [w]here participants pool their ownership of insurance policies

so as to share in the proceeds from those policies."[6]

On June 2, 2017, Defendants filed a motion to dismiss.  On July 6, 2017, Ross

filed an opposition.  On August 10, 2017, Defendants informed the court that they

would not file a reply.  On September 28, 2017, I granted the motion to dismiss to

the extent Ross pursued derivative claims, but I denied it in all other respects.

On March 8, 2018, Ross filed his motion to compel ILA to respond to his

discovery requests; ILA filed its opposition on May 9, 2018; and Ross filed his reply

on April 17, 2018.

On March 9, 2018, Defendants filed their motion for judgment on the

pleadings, followed by their opening brief in support of the motion on March 13,

---

[4]      *Id.* ¶ 7.

[5]      *Id.* ¶ 12.

[6]      System and method for assuring predictable gains, U.S. Patent No. 5,974,390 (filed
         July 21, 1997).

2018. On April 13, 2018, Ross filed his opposition. On May 1, 2018, Defendants filed their reply. On May 2, 2018, Ross filed a surreply.

On September 7, 2018, Ross filed his motion for default judgment against Defendant David B. Simon, who filed an opposition on October 9, 2018; Ross filed his reply on October 12, 2018.

On November 13, 2018, I held oral argument on three motions—Ross's motion to compel, Ross's motion for default judgment, and Defendants' motion for judgment on the pleadings—which are now fully briefed and before me.

The IPB Operating Agreement (the "Operating Agreement") contains requirements for how the Company functions. Section 6(d) of the Operating Agreement ("Section 6(d)") requires that

> except as otherwise provided . . . the Company shall be managed by a committee consisting of a designated member of MRB and a designated member of ILA (the Executive Committee). Except as otherwise provided in this Agreement, or any written amendment hereto, all decisions regarding the management of the Company are within the purview of the Executive Committee and shall only be made by unanimous vote of the Executive Committee.[7]

---

[7]     Defs.' Opening Br. Ex. A § 6(d).

Section 7(a) of the Operating Agreement ("Section 7(a)") adds that

> [t]he Executive Committee will not be liable to the Company or any other Member for (i) the performance, or omission to perform any act or duty on behalf of the Company if, in good faith, such conduct did not constitute fraud, gross negligence or reckless or intentional misconduct and (ii) the performance, or the omission to perform, on behalf of the Company, any act upon good faith reliance on advice of legal counsel, accountants or other professional advisors to the Company.[8]

Section 10(b) of the Operating Agreement ("Section 10(b)") states that

> [a]s soon as practicable after the end of each Fiscal Year, the Company (i) will cause to be prepared and sent to each Member a balance sheet and a statement of income and expenses for the Company which may, but not need, be audited by a certified public accountant, and (ii) will cause to be prepared and sent to each Member a report setting forth in sufficient detail all such information and data with respect to the Company for such Fiscal Year as shall enable each Member to prepare his income tax returns in accordance with the laws, rules and regulations then prevailing. The Company will also cause to be prepared and filed all tax returns required of the Company. All balance sheets, statements, reports and tax returns required pursuant to this Section 10(b) shall be prepared at the expense of the Company.[9]

---

[8]     *Id.* § 7(a).

[9]     *Id.* § 10(b).

## II.    ANALYSIS

Plaintiff asserts three claims, which he styles as  (1) breach of contract; (2) breach of contract—implied covenant of good faith; and (3) continuing breach of contract—breach of fiduciary duty.[10]   Defendant moves for judgment on the pleadings as to all three claims.

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."[11]  "When considering a Rule 12(c) motion, the court must accept well-pled facts in the complaint as true and view those facts in the light most favorable to the nonmoving party."[12]  "A motion for judgment on the pleadings will be granted if no material issue of fact exists and the moving party is entitled to judgment as a matter of law."[13]  "A court may not grant

---

[10]    *See* Compl. ¶¶ 24-42.

[11]    Ct. Ch. R. 12(c).

[12]    *Fiat N. Am. LLC v. UAW Retiree Med. Benefits Tr.*, 2013 WL 3963684, at *7 (Del. Ch. July 30, 2013) (citing *Rag Am. Coal Co. v. AEI Res., Inc.*, 1999 WL 1261376 (Del. Ch. Dec. 7, 1999)).

[13]    *Id.* (citing *Credit Suisse Sec. (USA) LLC v. W. Coast Opportunity Fund, LLC*, 2009 WL 2356881, at *3 (Del. Ch. July 30, 2009)).

the motion unless it appears beyond doubt that the claimant can prove no set of facts in support of its claims which would entitle it to relief."[14]

## A. Plaintiff's Breach of Contract Claim Fails

Plaintiff claims breach of contract based on a failure to provide documents, arguing that

> Section 10(b) of the IPB Operating Agreement requires IPB on an annual basis (1) to prepare and send to each member a balance sheet and a statement of income and expense for the Company, and (2) to prepare and send to each member a report setting forth in sufficient detail all such information and data with respect to the Company for such Fiscal years that shall enable each member to prepare his income tax returns.[15]

Plaintiff contends that Defendants have breached this obligation each year since 2014.[16]

---

[14] *Id.* (quoting *Petroplast Petrofisa Plasticos S.A. v. Ameron Int'l Corp.*, 2009 WL 3465984, at *7 (Del. Ch. Oct. 28, 2009)).

[15] Compl. ¶ 27.

[16] Defendants argue that Ross is not a member of IPB because he is not listed as a member in the Operating Agreement and therefore, he cannot assert these claims. Ross points out that he signed the Operating Agreement on behalf of himself individually and on behalf of SAVE Associates. Because I resolve the claims on other grounds, and because the question of membership requires resolution of factual disputes beyond the scope of a motion for judgment on the pleadings, I need not address that argument and decline to do so.

An analysis of Defendants' obligations requires that this Court interpret the contract. "Under Delaware law, courts interpret contracts to mean what they objectively say. This approach is longstanding and is motivated by grave concerns of fairness and efficiency."[17]

> Because Delaware adheres to the objective theory of contract interpretation, the court looks to the most objective indicia of that intent: the words found in the written instrument. As part of this initial review, the court ascribes to the words their common or ordinary meaning, and interprets them as would an objectively reasonable third-party observer.[18]

"Standing in the shoes of an objectively reasonable third-party observer, if the court finds that the terms and language of the agreement are unmistakably clear, then the court should look only to the words of the contract to determine its meaning and the parties' intent."[19] "[W]hen we may reasonably ascribe multiple and different

---

[17] *Seidensticker v. Gasparilla Inn, Inc.*, 2007 WL 4054473, at \*1 n.1 (Del. Ch. Nov. 8, 2007) (citing Joseph M. Perillo, *The Origins of the Objective Theory of Contract Formation and Interpretation*, 69 Fordham L. Rev. 427, 477 (2000)).

[18] *Sassano v. CIBC World Mkts. Corp.*, 948 A.2d 453, 462 (Del. Ch. 2008) (footnotes omitted).

[19] *Dittrick v. Chalfant*, 948 A.2d 400, 406 (Del. Ch. 2007).

interpretations of a contract, we will find that the contract is ambiguous."[20]  Despite that, "[t]he parties' steadfast disagreement will not, alone, render [a] contract ambiguous."[21]  When the "meaning [of a contract] is unambiguous and the underlying facts necessary to its application are not in dispute, judgment on the pleadings is an appropriate procedural device for resolving the dispute."[22]

Ross alleges that the Operating Agreement requires IPB to prepare and send him financial statements each year.  Ross, however, is not suing IPB.  Indeed, Ross voluntarily dismissed IPB from this case "for judicial economy and in order to narrow the focus of this action."[23]  The terms of the Operating Agreement unambiguously refer to IPB as the responsible party, not the Defendants.[24]  In other

---

[20]     *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1160 (Del. 2010).

[21]     *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992) ("A contract is not rendered ambiguous simply because the parties do not agree upon its proper construction.").

[22]     *CorVel Enter. Comp, Inc. v. Schaffer*, 2010 WL 2091212, at *1 (Del. Ch. May 19, 2010).

[23]     Pl.'s Mot. to Dismiss Institutional Pooled Benefits LLC, Meyer-Chatfield Corp. and Balshe LLC 1.

[24]     Defendants also argue that "[b]ecause IPB incurred losses (from capital and funds provided by Defendants) during all relevant times, Ross did not need to receive any financial reporting 'to prepare his income tax returns in accordance with the laws,

sections of his complaint, Ross appears to argue that Defendants should have created and sent him other documents and reports; he seems to contend that their failure to do so is evidence of their wrongdoing.[25] To the extent Ross actually seeks those additional documents or reports, Ross does not plead any support for the proposition that he is entitled to those documents.

Thus, Defendants have carried their burden to show that Ross can prove no set of facts in support of his breach of contract claims that would entitle him to relief and that Defendants are entitled to judgment as a matter of law.

### B. Plaintiff's Breach of Contract—Implied Covenant of Good Faith and Fair Dealing Claim Fails

Ross next alleges that Defendants' failure to implement certain foundational requirements he argues are necessary to patent monetization constitutes a breach of the implied covenant of good faith and fair dealing (the "Implied Covenant").[26]

---

rules and regulations then prevailing' under Section 10(c)." Defs.' Opening Br. 8. Because I resolve the motion on other grounds, I decline to decide this issue.

[25] *See* Compl. ¶ 34 ("[D]espite repeated requests, Defendants refus[e] to provide required reports or any materials whatsoever in regard to the business and financial activities regarding IPB so as to hide their breach, . . . Plaintiffs' request for copies of the Trust document and Private Offering Memorandum have been denied by Defendant (as well as MRB)").

[26] *Id.* ¶¶ 30-36.

"Under Delaware law, the implied covenant of good faith and fair dealing attaches to every contract by operation of law."[27] The Implied Covenant "'requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits' of the bargain."[28] "The implied covenant only applies where a contract lacks specific language governing an issue"—*i.e.*, where a "gap" exists in the contractual scheme.[29]

"The Court must focus on 'what the parties likely would have done if they had considered the issues involved.'"[30] Furthermore, "[i]t must be 'clear from what was expressly agreed upon that the parties who negotiated the express terms of the contract would have agreed to proscribe the act later complained of . . . had they thought to negotiate with respect to that matter.'"[31] "The implied covenant only

---

[27]     *Fortis Advisors LLC v. Dialog Semiconductor PLC*, 2015 WL 401371, at *3 (Del. Ch. Jan. 30, 2015).

[28]     *Id.* (quoting *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 443 (Del. 2005)).

[29]     *Id.* (quoting *Alliance Data Sys. Corp. v. Blackstone Capital P'rs V L.P.*, 963 A.2d 446, 770 (Del. Ch. 2009), *aff'd*, 976 A.2d 170 (Del. 2009)).

[30]     *Id.* at *3 (Del. Ch. Jan. 30, 2015) (quoting *Lonegan v. EPE Hldgs. LLC*, 5 A.3d 1008, 1018 (Del. Ch. 2010)).

[31]     *Id.*

applies to developments that could not be anticipated, not developments that the parties simply failed to consider."[32]  Thus, when the complaint does not identify any gap in the contract, and the contract therefore addresses the issue raised in the claim, there can be no claim for breach of the Implied Covenant.

> Ross argues that

>> in order for the Patent to be lawfully exploited through enrollment of participants in a PBT Trust or Trusts, certain foundational requirements must be met:  (1) a Trust document must be created, (2) a Trustee must be appointed and (3) because such enrollment is considered to be a security, a Private Offering Memorandum must also be crafted.[33]

Ross contends that Defendants' failure to carry out any of these steps that he considers necessary to successful patent exploitation (the "Foundational Requirements") constitutes a breach of the Implied Covenant.  Ross adds that Defendants' failure to provide him with "copies of the Trust document and Private Offering Memorandum" and "Defendants [*sic*] refusal to provide required reports or any materials whatsoever in regard to the business and financial activities regarding IPB" reveal Defendants' failure to implement the Foundational Requirements and

---

[32]     *Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010).

[33]     Compl. ¶ 34.

reflect a "breach [of] their most important duty to attend to the purpose of the Company."[34]

Ross correctly identifies the legal standards applicable to a claim for a breach of the Implied Covenant. But his claims have several defects. Ross fails to identify any contractual gaps where it was "clear from what was expressly agreed upon that the parties who negotiated the express terms of the contract would have agreed to proscribe the act later complained of . . . had they thought to negotiate with respect to that matter." Further, his allegations do not relate to "developments that could not be anticipated." No pleadings before me support the notion that the parties to the Operating Agreement would have contractually required the Foundational Requirements had they only anticipated the need for them. Nor does the Company's failure to send Ross documents to which he has shown no entitlement under the Operating Agreement evidence a breach of the Implied Covenant.

Thus, Defendants have carried their burden to show that Ross can prove no set of facts in support of his Implied Covenant claims that would entitle him to relief and that Defendants are entitled to judgment as a matter of law.

---

[34] *Id.*

## C. Plaintiff's Breach of Fiduciary Duty Claim Fails

In Ross's third count, "Continuing Breach of Contract—Breach of Fiduciary Duty," he asserts that Defendants have breached their fiduciary duties of care and loyalty.

Ross alleges that

> [d]ue to their continuing complete absence of effort or care in exploiting the Patent, Defendants have significantly mishandled (1) the investments by Plaintiffs of their right to purchase the MONY portion of the Patent and sell it to any party of their choosing and (2) the 50% of the [Patent] belonging to Alan J. Ross, and in doing so they have not only breached the Implied Covenant of Good Faith, they have also continuingly breached their fiduciary duty of care and loyalty to their fellow member of the IPB LLC. As a result of that breach Plaintiffs have suffered and will suffer harm and other damages.[35]

As evidence, Ross points to (1) Defendants' failure to carry out precisely the same Foundational Requirements he identified in his Implied Covenant claim; and (2) "Defendants [*sic*] refusal to provide required reports or any materials whatsoever in regard to the business and financial activities regarding IPB" and the Foundational Requirements.[36]

---

[35]    *Id.* ¶ 42.

[36]    *Id.* ¶ 40.

The Complaint does not clearly identify what duty the Defendants purportedly breached.[37] Regardless, Section 7(a) of the LLC Agreement provides that

> [t]he Executive Committee will not be liable to the Company or any other Member for (i) the performance, or omission to perform any act or duty on behalf of the Company if, in good faith, such conduct did not constitute fraud, gross negligence or reckless or intentional misconduct and (ii) the performance, or the omission to perform, on behalf of the Company, any act upon good faith reliance on advice of legal counsel, accountants or other professional advisors to the Company.[38]

Ross alleges a failure to carry out tasks that he says were necessary to the success of the business. At best, Ross claims the Defendants exercised poor business judgment in deciding how to pursue commercialization of the patent—that is, Defendants should have followed his blueprint for commercialization instead of their own.[39] Ross offers no explanation for why such a failure, if indeed it exists, rises to the level

---

[37] Ross argues Defendants have shown a "seemingly complete absence of effort or care." *Id.* ¶ 41.

[38] Defs.' Opening Br. Ex. A § 7(a).

[39] Defendants argue that they have expended considerable resources in attempting to commercialize the patent. *See, e.g.*, Defs.' Reply Br. 7 n.1 ("In fact, as the parties' prior litigations demonstrated, Defendants made many attempts and spent millions of dollars on the launching [*sic*] a PBT Trust since 2008, including hiring and paying counsel to draft Private Placement Memoranda to distribute to potential participants."); Defs.' Answer & Affirmative Defenses 17 (denying as false Plaintiff's assertion that they have used no effort to exploit the patent).

of "fraud, gross negligence or reckless or intentional misconduct" that Section 7(a) requires.

Furthermore, "[c]ourts will dismiss the breach of fiduciary duty claim where the [breach of fiduciary duty and breach of contract] claims overlap completely and arise from the same underlying conduct or nucleus of operative facts."[40] The same rule applies to overlap between breach of fiduciary duty and breach of Implied Covenant claims alleging wrongdoing specifically related to contractual obligations. "To allow a fiduciary duty claim to coexist in parallel with an implied contractual claim, would undermine the primacy of contract law over fiduciary law in matters involving the essentially contractual rights and obligations of . . . stockholders."[41] Put differently, "because the contract claim addresses the alleged wrongdoing . . . any fiduciary duty claim arising out of the same conduct is superfluous."[42] Here, the

---

[40] *Grunstein v. Silva*, 2009 WL 4698541, at *6 (Del. Ch. Dec. 8, 2009).

[41] *Gale v. Bershad*, 1998 WL 118022, at *5 (Del. Ch. Mar. 4, 1998) (citation omitted).

[42] *Id.*; *see also Blue Chip Capital Fund II Ltd. P'ship v. Tubergen*, 906 A.2d 827, 833 (Del. Ch. 2006) ("Just like in *Bershad*, the fiduciary duty claim that the board breached its duty of loyalty . . . is substantially the same as the implied contract claim . . . . Therefore, if the dispute relates to rights and obligations expressly provided by contract, the fiduciary duty claims would be 'superfluous.'" (quoting *Bershad*, 1998 WL 118022, at *5)).

breach of fiduciary duty claims and the Implied Covenant claims are identical. Thus, Defendants have carried their burden to show that Ross can prove no set of facts in support of his breach of fiduciary duty claims that would entitle him to relief and that Defendants are entitled to judgment as a matter of law.

## III.   CONCLUSION

For the foregoing reasons, Defendants' motion for judgment on the pleadings is GRANTED. The remaining pending motions are moot.

**IT IS SO ORDERED**.

Sincerely,

*/s/ Tamika Montgomery-Reeves*

Vice Chancellor

TMR/jp